RENDERED: APRIL 17, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0723-MR

COMMONWEALTH OF KENTUCKY　　　　　　　　　　APPELLANT


v.　　　　APPEAL FROM BELL CIRCUIT COURT
HONORABLE KEITH A. NAGLE, JUDGE
ACTION NO. 19-CR-00247


JOSHUA ELLIS　　　　　　　　　　　　　　　　APPELLEE

AND


NO. 2024-CA-0908-MR

COMMONWEALTH OF KENTUCKY　　　　　　　　　　APPELLANT


v.　　　　APPEAL FROM BELL CIRCUIT COURT
HONORABLE KEITH A. NAGLE, JUDGE
ACTION NO. 19-CR-00247


JOSHUA ELLIS　　　　　　　　　　　　　　　　APPELLEE

<u>OPINION AFFIRMING</u>
<u>APPEAL NO. 2024-CA-0723-MR AND</u>
<u>VACATING AND REMANDING</u>
<u>APPEAL NO. 2024-CA-0908-MR</u>

** ** ** ** **

BEFORE: A. JONES, L. JONES, AND KAREM, JUDGES.

JONES, L., JUDGE: The Commonwealth of Kentucky (Commonwealth) brings

Appeal No. 2024-CA-0723-MR from a June 7, 2024 order of the Bell Circuit Court

denying the Commonwealth's motion for continuance of a jury trial and brings

Appeal No. 2024-CA-0908-MR from a June 28, 2024 order of the Bell Circuit

Court dismissing with prejudice the indictment against Joshua Ellis.[1] We affirm

Appeal No. 2024-CA-0723-MR and we vacate and remand Appeal No. 2024-CA-

0908-MR.

The pertinent facts and protracted procedural history were succinctly

set forth by the trial court in its June 28, 2024 order dismissing the indictment

against Ellis as follows:[2]

FACTUAL BACKGROUND

There appears to be little, if any, disagreement that
on April 10, 2019, the Defendant Joshua Ellis was
operating a motor vehicle when it apparently struck the

---

[1] Appeal Nos. 2024-CA-0723-MR and 2024-CA-0908-MR were consolidated for all purposes by an Order of this Court entered October 21, 2024.

[2] In this Opinion, we recite a portion of the June 28, 2024 order dismissing the indictment against Ellis only for its historical and procedural facts.

victim, Adie Fuson, Jr., ("Fuson") who died from his injuries. The Defendant and his adult son were traveling from their home in Monticello, Kentucky, to Harlan County, Kentucky. The two were proceeding eastbound on Highway 92, a two-lane paved state highway, in Bell County, Kentucky, when the incident occurred, at about 8:00 p.m. The conditions at the time of the incident were either dark, or 'low light.' The incident arose because of an obstacle in the roadway, a pressure washer had fallen off the vehicle being operated by Jeff Saylor (hereinafter "Jeff") and Christian Saylor (hereinafter "Christian"). The Saylors are the two witnesses that were unavailable for trial, being in Texas.

The victim, Adie Fuson, Jr., (hereinafter "Mr. Fuson"), had parked his vehicle, with headlights on, facing westbound in the eastbound lane (i.e., facing oncoming traffic, as if it were traveling in the wrong lane) in an apparent attempt to warn oncoming traffic. The roadway there goes over a small rise or knoll immediately west of the scene. Defendant, driving eastbound, crested the small rise and encountered his lane of travel blocked. In order to avoid a head-on collision, the Defendant swerved to his right, off the road and onto the righthand shoulder, striking a mailbox, and a tree where the Defendant's vehicle ultimately came to rest. A tragedy ensued, as there appears to be little if any disagreement that, in the process, Defendant's vehicle struck [Mr.] Fuson, causing his death.

Less than a minute before the incident, another eastbound vehicle, operated by Jessica Wilson (hereinafter "Ms. Wilson"), encountered the same situation, but instead of serving right, she swerved left into the westbound lane (i.e., into the wrong lane) to avoid colliding head-on with her obstructed lane of travel, before coming to a stop. At that point, the Defendant and his son, Jeff and Christian Saylor, Jessica Wilson, and Jessica Kirkland, and Kadence McQueen (two neighbors and witnesses) milled about the scene for

several minutes. Obviously, there is a fact issue of whether the Defendant was or became aware that his vehicle had struck Mr. Fuson, with the Commonwealth vigorously contending that he was so aware. But it is undisputed that no witnesses were aware that Mr. Fuson had been struck until James Watkins (hereinafter "Mr. Watkins"), located his body, nearly thirty (30) minutes after the incident occurred; nor did anyone see the Defendant's vehicle strike Mr. Fuson. By the time Mr. Fuson's body was located, the Defendant and his son were able to get their vehicle back onto the road and had proceeded on their way to Harlan.

Those present at the scene of the incident provided law enforcement with a description of the Defendant and his vehicle, and the Defendant was located the next day by Kentucky State Police (hereinafter "KSP"). When KSP located the Defendant, his vehicle was impounded, the Defendant was arrested.

On July [10], 2019, the Defendant was indicted by the Grand Jury in Bell Circuit Court, being charged with Leaving Accident/Fail to Render Aid/Assist with Death/Serious Physical Injury, and Reckless Homicide, both Class D felonies.

## PROCEDURAL HISTORY

The Defendant appeared for arraignment on July 29, 2019, and was assigned a pretrial conference on September 16, 2019, which was then moved, by agreement, to October 21, 2019. At the pretrial conference on October 21, 2019, this matter was initially set for a jury trial to begin March 5, 2020. Without objections the first trial date of March 5, 2020 was continued (either for mutual convenience, or for COVID, or for both reasons), and reassigned for a pretrial conference on May 18, 2020, which was again reassigned for August 17, 2020.

-4-

A Daubert[3] Motion and a Motion *in limine* were fully briefed and argued to the Court, with the hearing on the motion *in limine* and Daubert being re-scheduled multiple times until ultimately being heard on April 15, 2021. At that hearing this matter was re-assigned for jury trial to begin November 2, 2021. Subpoenas were issued and served by Defense in October 2021, but both parties agreed to send this matter to mediation, pursuant to an Order entered on October 20, 2021. The jury trial was continued to allow time for the mediation. But the mediation was unsuccessful, and this matter came back on the Court's docket for pretrial conference on December 6, 2021.

Up to this point, the Defendant agreed or at least acquiesced to the continuances. **But beginning in December 2021, the case began to be continued without the agreement or acquiescence of Defendant**.

Following the unsuccessful mediation in November 2021, the Court conducted a pretrial conference on December 6, 2021, at which times the Court reassigned the matter for trial to begin August 23, 2022. Thereafter, trial subpoenas were issued, served, and filed by the Defendant in July 2022, but at the final pretrial conference on August 17, 2022, the trial was continued, as a witness for the Commonwealth – an officer on active military – was unavailable ([Video Record] VR 08/17/22; 02:03:24.) At that time, the case was reassigned for jury trial to begin January 31, 2023.

In January 2023, trial subpoenas were again issued, served, and filed by the Defendant, but at the final pretrial conference on January 25, 2023, the jury trial – which had been set to begin on January 31st – was again continued, for reasons that are not apparent on the

---

[3] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

record.[4] The Court wanted to reset the trial for March 16, 2023, as 2nd position priority, as the Court recognized it was an older case and wanted to set a prompt trial date. But defense counsel requested a "a date where we're first on the [trial] calendar, even if it's a little later [date]" (1/25/23 VR 02:18:05), because Defense understood the reality of criminal trial dockets: That the best, and really the only assured way to get your criminal case to the jury is to be assigned the 1st position on the trial docket. The Court granted the Defendant's request and set the jury trial for June 1, 2023, in 1st priority position on the docket.

Trial subpoenas were again issued, served, and filed by the Defense in May 2023, for the June 1st jury trial. At the May 24, 2023, final pretrial conference, both the Commonwealth and the Defense announced ready for trial. For reasons not disclosed on the record, on the morning of trial, June 1st 2023, the case was continued to September 12, 2023, again to be 1st position priority for jury trial that day (VR 06/12/23; 10:02:40). However, an Order re-setting the matter for September 12, 2023 was never prepared nor entered.

Thus, without an Order of record setting a trial date, on November 14, 2023, Defense counsel filed his own motion to assign this matter for jury trial. Defense counsel again requested a day when the case would be the priority case for trial. (VR 12/18/23; 02:22:25). The Commonwealth agreed and suggested a date in June 2024 when it would be the only case set that day. The Court entered an Order on December 18, 2023, assigning the case for jury trial to begin June 11, 2024, with a final pretrial conference on May 29, 2024. At that December hearing, the Court emphasized the priority of this five-year old case, to be 1st on the trial docket, and in fact was

---

[4] Bell Circuit Judge, Robert V. Constanzo previously presided over this case; he was replaced by Judge Keith A. Nagle in late 2023.

the only case scheduled for June 11, 2024 (VR 12/18/23; 02:22:25; 02:23:30; 02:24:28).

At the Final pretrial conference on May 29, 2024, the Defense announced ready, conceding that not all the subpoenas had been served, but seemingly unconcerned about the presence of any witnesses. The Defense had again issued, served, and filed subpoenas in anticipation of the May 31, 2024 jury trial. The Commonwealth also announced ready at that Final pretrial conference, with no reservation, specifically stating: [COURT] "Is the Commonwealth ready?" [COMMONWEALTH] "We are your honor." (VR 05/29/24; 09:13:26-30). It is now apparent to this Court that the Commonwealth had made scant attempt to determine if it truly was ready for trial when it announced so at the Final pretrial conference, because the two unavailable witnesses were working in Texas, had been so for some weeks prior to the date of the final pretrial and trial, and would continue so working in Texas for several more weeks (per the Commonwealth at its Motion to Continue filed a week later, see VR 6/07/24, VR 1:46:54-1:48:07). Even a cursory effort in this regard – a phone call – would have been sufficient to determine their availability prior to the final pretrial. It is the finding of this Court that the Commonwealth announced ready at final pretrial when it had made an insufficient effort to determine if it was truly ready.

On June 6, 2024, the Commonwealth filed a Motion to Continue Trial, citing the unavailability of two 'indispensable' witnesses, to be heard on June 7, 2024. **The Defendant objected to any continuance, and re-asserted his right to trial, citing the grounds that this case is five (5) years old, the multiple continuances and multiple instances in which counsel for the Defendant was notified only on the eve of trial that the case was continued without being given the opportunity to object, and that countless hours had been spent preparing for trial on prior jury trial dates**. The Defense stated that the two unavailable

-7-

witnesses were not indispensable, as they had previously subpoenaed these same witnesses, and desired to proceed without them present. Further, Defense indicated that they could stipulate to much of the anticipated testimony of the two witnesses.

At the hearing on June 7, 2024, the Court heard arguments of counsel, and considered to what extent the two unavailable witnesses were 'indispensable' to the Commonwealth's case. The Court denied the Motion to Continue, and entered an Order so reflecting on June 7, 2024, citing the priority of the case [at the final pretrial on May 29, the Commonwealth had stated in the record "This is the only case. It was set specifically so it would go that day" (VR 5/29/24 9:13:40-48)], the previous continuances over a five-year span, the Commonwealth's prior announcement of ready at the Final pretrial conference one week prior, and skepticism over whether these two witnesses were in fact 'indispensable' to a full and fair adjudication of the matter.

On the morning of trial, June 11, 2024, the pool of jurors arrived at the courthouse and were in the hallway waiting for the case to be called, and for *voir dire* to begin. The Defendant and his counsel were present and ready. The Commonwealth was present, but despite being put on notice by the Court on December 18, 2023, May 29, 2024, and June 7, 2024, that the Defendant's case would be the priority case and would go to trial on June 11th, the Commonwealth declared it was not ready to go forward, insisting that two witnesses, whose appearance the Commonwealth failed to procure, despite having six months to do so, were unavailable. The Commonwealth advised the Court of its Appeal, renewing its motion to continue, maintaining that the unavailable witnesses were indispensable, and that to proceed would be prejudicial error. The Court again denied the continuance, and directed the parties that the jury trial would either go forward that morning, or the case would be dismissed. In response, the

Commonwealth announced that it declined to put on any case at all, despite much if not most of its proof being available, and again requested a continuance, or in the alternative, that the case be dismissed without prejudice. The Court declined to do either . . . .

June 28, 2024 Order of Dismissal at 1-7 (emphasis added) (footnotes omitted). An order of dismissal was entered June 28, 2024, finding that the Commonwealth had violated Ellis's right to a speedy trial. These appeals follow.

**APPEAL NO. 2024-CA-0723-MR**

In its initial appeal (Appeal No. 2024-CA-0723-MR), the Commonwealth contends the trial court abused its discretion by denying its motion for continuance of the jury trial set for June 11, 2024. More particularly, the Commonwealth asserts it suffered substantial prejudice as a result of the trial court's denial of the motion to continue.

A motion for continuance of trial is governed by RCr[5] 9.04, which provides the trial court may grant a continuance "upon motion and sufficient cause shown by either party[.]" Our review of a trial court's decision to grant or deny a continuance is for an abuse of discretion. *Taylor v. Commonwealth*, 611 S.W.3d 730, 735 (Ky. 2020) (citation omitted). An abuse of discretion occurs where the

---

[5] Kentucky Rules of Criminal Procedure.

-9-

decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.*

When ruling upon a motion for continuance, the trial court must consider the unique facts and circumstances of each case including: "1) length of delay; 2) number of previous continuances; 3) inconveniences to parties, witnesses, counsel, and the court; 4) complexity of the case; 5) availability of other competent counsel; 6) whether the movant sought delay for his own sake or caused the need for it and; 7) whether a denial of the continuance would lead to identifiable prejudice." *Id.* at 735; *see also Simpson v. Commonwealth*, 718 S.W. 3d 900, 908 (Ky. 2025).

As to the first and second factors, the length of the delay and the number of previous continuances, we believe both weigh against granting the Commonwealth's motion to continue trial. As set forth above, this case had been pending for almost five years; several continuances were granted that Ellis had not agreed to; and on a few occasions the trial had been continued the day before it was set to begin without Ellis having the opportunity to object. Ellis was indicted on July 10, 2019, and a jury trial was initially set for March 5, 2020. It appears that a continuance of the trial date was granted either by agreement of the parties, due to the COVID-19 pandemic, or both. Then, on April 15, 2021, trial was set for

-10-

November 2, 2021. The parties appeared again on November 2, 2021, and mutually agreed to a continuance to attend mediation.

The mediation was unsuccessful and a trial date of August 23, 2022, was subsequently set. The Commonwealth was granted a continuance due to the unavailability of a witness who was serving on active duty in the military. Trial was then set for January 31, 2023. However, for reasons not apparent in the record, a continuance was again granted. The trial court offered to set the trial as second on the docket for March 16, 2023. Counsel for Ellis expressed he would prefer to have a trial date where the case would be first on the court's docket so it would definitely proceed to trial on that date. Trial was set for the first available date where the case would be first on the docket, which was June 1, 2023. A pretrial conference was conducted on May 24, 2023, and both parties announced ready for the June trial date. Again, for reasons not evident from a review of the record, on the morning of trial, the case was continued, and trial was set first on the docket on September 12, 2023. However, an order setting the September 12th trial date was never entered.

The parties next appeared before the trial court on December 18, 2023, on Ellis's motion to set a trial date. Ellis's motion was granted, and trial was set for June 11, 2024. The parties appeared for a pretrial conference on May 28, 2024. The Commonwealth and Ellis both announced ready for trial. However, on

-11-

June 7, 2024, the Commonwealth appeared before the court on its motion to continue trial. As grounds for the continuance, the Commonwealth asserted two witnesses, Jeff and Christian Saylor, were unavailable for trial. More particularly, the Commonwealth asserted the Saylors were indispensable witnesses and had "advised the Commonwealth that they reside in Texas and are currently working on a contract and thus are unavailable on June 11, 2024."

In response, Ellis observed that he, not the Commonwealth, had subpoenaed the Saylors. Ellis also offered to stipulate to much of the Saylors' testimony. Ellis noted that none of the witnesses, including the Saylors, saw Fuson being struck by a vehicle. There were also multiple other witnesses on the scene that could testify to Ellis's demeanor and behavior immediately following the incident. The trial court denied the Commonwealth's motion for continuance stating the case had been pending since 2019, had been continued multiple times, and had been set as the only case on the June 11, 2024 trial docket since December 18, 2023.

The trial court noted the Commonwealth had announced ready during the pretrial conference and did not provide sufficient cause to warrant a continuance. Furthermore, the trial court found that a continuance would result in identifiable prejudice to Ellis.

-12-

The third factor which is the inconvenience the delay caused to the parties, witnesses, counsel, and court also weighs against granting the Commonwealth's motion to continue trial. Ellis and his counsel had been prepared to go forward with trial on multiple occasions only to be notified of a continuance shortly before trial and without an opportunity to object. Ellis had also subpoenaed witnesses to appear, which certainly caused inconvenience when the trial did not go forward. On June 11, 2024, the potential jurors were waiting in the courthouse for jury selection to begin, thus the court was also inconvenienced by the Commonwealth's delays. Furthermore, the court devoted a few days exclusively to this trial, without scheduling a second priority case, wasting the court's time and resources when the Commonwealth sought a continuance based on information about the Saylors' attendance – information the Commonwealth, had it exercised due diligence, could have ascertained before it announced ready for trial.

Regarding the fourth factor, the case does not appear to be particularly complex, and the Commonwealth had more than ample time over the last five years to prepare. As for the fifth factor, availability of other competent counsel, it was not relevant to this case.

The sixth factor, whether the Commonwealth, as movant, sought to delay trial for its benefit or caused the need for the delay. This factor weighs heavily against the Commonwealth. As has been repeatedly pronounced above,

the Commonwealth was responsible for the vast majority of the trial delays and was solely responsible for the final attempt to delay by not securing the presence of the two witnesses it claimed were indispensable. Witnesses whom, the record shows, were not even subpoenaed by the Commonwealth for the June 11, 2024 trial date or several of the previous trial dates. As such, the Commonwealth certainly caused the need for yet another delay for reasons the trial court justifiably found lacking in merit.

The seventh and final factor is whether the denial of the continuance would lead to identifiable prejudice. In this case, there were several other witnesses available to testify who had also been present at the scene of the incident. There was also a video recording of the events surrounding the incident. Although the video did not depict Fuson being struck by a vehicle, as another car was blocking the view, the video did show the events that occurred just before and just after Fuson was struck. These are the same events the Saylors would have testified to as they too did not witness Fuson being struck by Ellis's vehicle. In addition, Ellis had offered to stipulate to much of what the Commonwealth claimed would be testified to by the Saylors, and the Commonwealth had not considered the Saylors as necessary witnesses when issuing subpoenas. The trial court did not abuse its discretion by finding Ellis not the Commonwealth would suffer identifiable prejudice if a continuance was granted.

-14-

Considering these factors as a whole, we do not believe the trial court abused its discretion by denying the Commonwealth's motion for a continuance by order entered June 7, 2024.

### APPEAL NO. 2024-CA-0908-MR

Following entry of the June 7, 2024 order denying the Commonwealth's motion for a continuance, the trial date of June 11, 2024, remained on the docket. On the morning of trial, the Commonwealth informed the trial court that on the evening before it had filed[6] an interlocutory appeal pursuant to KRS[7] 22A.020(4) from the trial court's June 7, 2024 order denying its motion for a continuance. The Commonwealth asserted the trial court must stay the proceedings pending resolution of the interlocutory appeal. The Commonwealth also informed the court it was not prepared to go forward with the trial repeating the argument that two witnesses it deemed indispensable were not available. The trial court denied the continuance and the stay, then informed the Commonwealth the trial would go forward as planned or the case would be dismissed. The Commonwealth refused to go forward. By order entered June 28, 2024, the trial court dismissed the indictment, finding Ellis's right to a speedy trial had been

---

[6] "The evening before trial (June 10, 2024), the Commonwealth had filed a Notice of Appeal of the June 7th Order denying the continuance; the [a]ppeal was filed after 4pm the day preceding trial." Commonwealth's Brief at 7 n.2.

[7] Kentucky Revised Statutes.

-15-

violated. Thereafter, the Commonwealth filed a timely appeal of the dismissal. (Appeal No. 2024-CA-0908-MR).

Before we can undertake an analysis of the speedy trial violation, we must determine whether the Commonwealth was entitled to a stay of the proceedings pending a decision on its interlocutory appeal. In doing so, we must turn to KRS 22A.020(4), which provides:

> (4) An appeal may be taken to the Court of Appeals by the state in criminal cases from an adverse decision or ruling of the Circuit Court, but only under the following conditions:
>
> (a) Such appeal shall not suspend the proceedings in the case.
>
> (b) Such appeal shall be taken in the manner provided by the Rules of Criminal Procedure and the Rules of the Supreme Court. . . .
>
> (c) When an appeal is taken pursuant to this subsection, the Court of Appeals, if the record so warrants, may reverse the decision of the Circuit Court and order a new trial in any case in which a new trial would not constitute double jeopardy or otherwise violate any constitutional rights of the defendant.

It is well established that an appeal generally "divests the trial court of jurisdiction to proceed further in the underlying case." *Commonwealth v. Bailey*, 71 S.W.3d 73, 84 (Ky. 2002). However, KRS 22A.020(4) expressly provides that an appeal taken pursuant thereto "shall not suspend the proceedings." *Id.* at 84.

-16-

To sort this conundrum, our Supreme Court explained in *Bailey*, "[t]he *proceedings* referred to in KRS 22A.020(4)(a) are 'proceedings after the attachment of jeopardy.' Consequently, once the proceedings commence and jeopardy attaches, the proceedings will not be suspended while the Commonwealth seeks review of rulings made during the course of the trial." *Bailey,* 71 S.W.3d at 84-85. More recently, our Supreme Court reiterated that "[f]or over forty years, this Court has interpreted the term 'proceedings' in KRS 22A.020(4) to refer only to proceedings after the attachment of jeopardy, and we will not change course today. Jeopardy attaches when the jury is sworn." *Commonwealth v. Burkhead*, 680 S.W.3d 877, 882 (Ky. 2023) (citation omitted).

Conversely, before a jury has been sworn and jeopardy has attached, the trial court matter will be stayed pending the appellate court's ruling on the appeal. In other words, "the filing of a notice of appeal divests the trial court of jurisdiction and 'transfers jurisdiction of the case from the circuit court to the appellate court.'" *Basin Energy Co. v. Howard*, 447 S.W.3d 179, 185 (Ky. App. 2014). Thus, the trial court was without jurisdiction to proceed until the appellate court's ruling was issued. *See Hisle v. Lexington-Fayette Urban County Gov't*, 258 S.W.3d 422, 430-31 (Ky. App. 2008) (holding a judgment entered by a court without jurisdiction is void).

In the case *sub judice,* on the morning of trial, the pool of jurors was at the courthouse waiting for the case to be called and for *voir dire* to begin. As the court dismissed the indictment, the jurors were not called upon to serve and were not sworn. As jeopardy had not attached, the proper course of action by the trial court was to issue a stay in the matter until the Court of Appeals ruled upon the Commonwealth's appeal of the trial court's denial of its motion to continue trial.

We sympathize with the obvious and well warranted frustration of the trial court. However, as the trial court lacked jurisdiction to enter the June 28, 2024 order of dismissal, we are compelled to vacate same and remand for proceedings consistent with this Opinion. Having found the order of dismissal was void, we have not addressed the merits of the speedy trial violation. Therefore, this might be merely a Pyrrhic victory for the Commonwealth.[8]

We view any remaining contentions of error as moot or without merit.

For the foregoing reasons, we affirm Appeal No. 2024-CA-0723-MR and we vacate and remand Appeal No. 2024-CA-0908-MR.

---

[8] Our Opinion should not be misconstrued as adjudicating the merits of the June 28, 2024 order that dismissed the indictment against Ellis. We merely conclude the circuit court erred by proceeding without jurisdiction while an appeal of the order denying the Commonwealth's motion for a continuance was pending.

ALL CONCUR.

BRIEFS FOR APPELLANT:        BRIEF FOR APPELLEE:

Russell Coleman               Thomas E. Carroll
Attorney General of Kentucky   Monticello, Kentucky

J. Grant Burdette
Assistant Solicitor General
Frankfort, Kentucky